# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| NANCY DAHLBERG and DELLA FAHNESTOCK,<br><br>        Plaintiffs,<br><br>vs.<br><br>WINNEBAGO INDUSTRIES, INC., *et al.*,<br><br>        Defendants. | No. C22-3043-LTS-KEM<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case is before me on motions (Docs. 42, 43, 44) for summary judgment filed on January 5, 2024, by defendants Winnebago Industries, Inc. (Winnebago), Volta Power Systems, LLC (VPS), and FCA US, LLC (FCA). In support, each defendant filed a brief (Docs. 42-2, 43-2, 44-2), a statement of material facts (Docs. 42-1, 43-1, 44-1) and an appendix (Docs. 42-3, 43-3, 44-3). Plaintiffs Nancy Dahlberg and Della Fahnestock have not filed a resistance and the time for doing so has long expired. Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On November 4, 2022, plaintiffs commenced this action by filing a petition (Doc. 4) in Iowa District Court for Winnebago County. They assert the following claims based on their purchase of a vehicle: (1) breach of factory warranty and (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* Doc. 4 at 7-9. They seek actual damages, a refund of the purchase price and attorney fees. *Id.* at 9-10. Defendants filed a notice (Doc. 1) of removal to this court on December 14, 2022, invoking the

court's federal question jurisdiction. They then filed answers (Docs. 6, 7, 8) on December 16, 2022. Trial is scheduled to begin June 24, 2024.

On February 22, 2023, the court approved the parties' proposed scheduling order (Doc. 14). *See* Doc. 15. After several extensions, the dispositive motion deadline was moved to January 5, 2024. Doc. 41. Defendants filed their respective motions for summary judgment on that date. *See* Docs. 42, 43, 44. Under this court's rules, plaintiffs' resistance materials were due on January 26, 2024. *See* LR 56(b) (establishing 21-day deadline). No such materials were filed. On April 5, 2024, defendants filed a notice (Doc. 55) concerning plaintiffs' failure to resist.

### *III. SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly

2

probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. RELEVANT FACTS

Winnebago, VPS and FCA each filed statements (Docs. 42-1, 43-1, 44-1) setting forth the alleged facts they rely on to seek summary judgment. Because plaintiffs did not file a response to the defendants' statements, all facts set forth in those statements are deemed admitted for purposes of their motions for summary judgment. *See* LR 56(b) ("The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact."); *see also* Fed. R. Civ. P. 56(e). Those undisputed facts are summarized below.

On January 20, 2022, plaintiffs purchased a new 2022 Winnebago Travato (the vehicle) from Lazydays RV in Seffner, Florida. Doc. 42-1 at 2, ¶¶ 6, 7. A Winnebago New Vehicle Limited Warranty accompanied the vehicle at purchase. *Id.* at 2, ¶¶ 8, 9. The Winnebago warranty provides a 1 year, 15,000 mile limited warranty that covers Winnebago supplied and installed parts. *Id.* at 2, ¶ 10. Specifically, the Winnebago warranty provides:

> Winnebago promises that any part of this motorhome – except those identified . . . – found to be defective in material or workmanship shall be repaired or replaced at no cost to the owner for parts, material, or labor so long as the motorhome has been used exclusively for recreational purposes and maintained as recommended in the Operator's Manual.

*Id.* at 3, ¶ 13. The Winnebago warranty excludes "a part or component covered under a warranty issued by its manufacturer (for example, the chassis, drivetrain, wheels, tires, electronics and appliances)." *Id.* at 3, ¶ 15. The warranty is not a promise or guarantee that the vehicle will be problem-free during the warranty period. *Id.* at 2, ¶ 12.

The vehicle included a VPS lithium-ion battery pack that is designed to distribute power to components in the "house" portion of the vehicle, including the television, microwave oven and any 120-volt electrical equipment using an outlet. Doc. 43-1 at 2, ¶ 8. VPS provided a limited written "repair or replacement" warranty for the lithium-ion battery pack. *Id.* at 2, ¶ 9. The VPS warranty states that "if there is a breach of this warranty, VPS will repair or replace the defective product or component, or provide a

4

refund based on the original purchase price paid to VPS for the product, and the choice of remedy shall be in VPS's sole discretion." *Id.* at 4, ¶ 12. VPS' warranty further states:

> This "repair or replacement" remedy is the exclusive remedy under this warranty. VPS has no responsibility or liability for any consequential or incidental damages, such as lost opportunity, lost profits, loss of use, storage charges, interest or finance charges, insurance or depreciation, transportation charges, or charges for towing, etc. which are specifically excluded and disclaimed from this warranty."

*Id.*

FCA manufactured the chassis of the vehicle. Doc. 44-1 at 3, ¶ 15. FCA provided a 3 year, 36,000 mile limited warranty for the chassis. Doc. 44-1 at 4, ¶ 22. It states:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation . . . These warranty repairs or adjustments including all parts and labor connected with them will be made by an authorized dealer at no charge, using new or remanufactured parts.

*Id.* at 4, ¶ 22.

Plaintiffs allege that "[d]efendants' warranties covered any repairs or replacements needed during the warranty periods and/or due to defects in factory materials or workmanship." Doc. 4 at 6. Plaintiffs discovered issues related to cleanliness on January 28, 2022, most if not all of which were resolved before plaintiffs took possession of the vehicle on February 5, 2022. Doc. 42-1 at 4, ¶ 17. During the drive from Lazydays RV to plaintiffs' home in Dunedin, Florida, the vehicle experienced an electrical failure and the electronics on the dashboard went blank. *Id.* at 4, ¶ 19; Doc. 43-1 at 5, ¶14. Fahnestock brought the vehicle to Dayton Andrews Dodge for repairs. Doc. 42-1 at 4, ¶¶ 20, 23. After employees at Dayton Andrews Dodge ran diagnostics, they found melted wiring, a blown fuse and communication issues. *Id.* at 5, ¶ 24; Doc. 43-1 at 5-6, ¶ 20. They noted: "[f]ound aftermarket jumper harness causing fuse to blow, and CAN

5

Case 3:22-cv-03043-LTS-KEM   Document 56   Filed 04/12/24   Page 5 of 15

communication issues. Removed jumper harness. Found communication issues no longer present." *Id.* They recommended plaintiffs bring the vehicle to Lazydays RV for further analysis and repair. Doc. 42-1 at 5, ¶ 24.

On February 15, 2022, Fahnestock picked up the vehicle and instead drove it approximately 60 miles to her office in Sarasota, Florida, but the vehicle experienced another electrical failure. *Id.* at 5, ¶¶ 21, 25; Doc. 43-1 at 6, ¶¶ 21, 23. The electrical failure caused the turn signals, headlights and dashboard displays not to function. Doc. 42-1 at 5, ¶ 22. Fahnestock returned to Dayton Andrews Dodge with the vehicle. *Id.* at 5, ¶ 26. Dayton Andrews Dodge employees performed another diagnostic, which indicated that the anti-lock brake system (ABS) module needed replacement and they replaced that module at no cost to plaintiffs. *Id.* at 6, ¶¶ 27, 28, 29; Doc. 43-1 at 8-9, ¶ 30; Doc. 44-1 at 2, ¶ 11.

On March 14, 2022, Lazydays RV picked up the vehicle from Dayton Andrews Dodge. Doc. 42-1 at 6, ¶ 30. Between March 14, 2022 and April 12, 2022, Lazydays RV identified the vehicle's electrical problem and replaced defective parts, including a wire harness, at no cost to plaintiffs. *Id.* at 6-7, at ¶¶ 31, 32, 34, 35. On April 13, 2022, the RV's faucet and television remote were repaired. *Id.* at 6, ¶ 36. That same day, a Lazydays RV employee informed Dahlberg that tests were performed and "the system is now up and running." Doc. 43-1 at 14, ¶ 58. Repairs were performed pursuant to the applicable warranties. Doc. 43-1 at 18, ¶ 93. Plaintiffs were not charged for the work performed. *Id.* at 18, ¶ 94.

Plaintiffs drove the vehicle 20 miles to Ozona Boat and RV in Palm Harbor, Florida, where they have stored the vehicle at no cost since April 2022. Doc. 42-1 at 7-8, ¶¶ 36, 39, 44. Both plaintiffs have testified that the vehicle did not experience mechanical or electrical incidents during the drive to Ozona Boat and RV. Doc. 42-3 at 29, 51. Plaintiffs have not identified any new or reoccurring defects since the repairs were completed in April 2022. Doc. 42-1 at 7, ¶¶ 37, 38. Nor have they used the vehicle since that time. *Id.* at 7-8, ¶¶ 39, 41. Plaintiffs state that (1) they never intend

6

to use the vehicle again because they have lost confidence in it and (2) no one has performed any maintenance on the vehicle since it was stored. Doc. 43-1 at 14-15, ¶ 63.

Experts for both the plaintiffs and the defendants have inspected the vehicle. Doc. 42-1 at 8, ¶ 45. None of the experts has identified remaining defects that have not been repaired. *Id.* at 9, ¶ 47. On June 16, 2023, Jason Newell performed his vehicle inspection for the plaintiffs. *Id.* at 8, ¶ 49; Doc. 42-3 at 72-73. He stated that the vehicle had been sitting for a long time and the chassis battery was dead, which limited his ability to inspect the vehicle. Doc. 42-3 at 73, 104-5. Newell's report states: "Vehicle chassis battery was dead on arrival. . . The main battery was also near exhausted however did invert as normal for the short time as the battery would allow. After using jumper cables the engine will start and idle normally. No time after did the engine stall." *Id.* at 73. The report further states that "The chassis battery was tested after allowing engine to run for most of the inspection. Surface charge was depleted via the headlights and test results are inconclusive. Test indicates low charge and retest, however the CCA is at 50 and 11.65 volts. The battery has sat long term with no maintenance charge." *Id.* at 73-74. Newell's report concludes:

> Abnormal charging voltage. Battery capacity weak and degraded consistent with sulfated cells. Overcharging could be the extremely discharged battery or internal PCM control fault. Most if not all electrical issues may be directly linked to overcharging or weak chassis battery.

*Id.* at 73.

Newell observed some issues with the vehicle and concluded the issues were caused by a weak battery with sulfated cells, which was caused by not using the vehicle from April 2022 to June 2023. Doc. 42-1 at 9, ¶¶ 49, 50. He stated that the first place he would start would be to "put a battery in there that tested out fine so that the charging system doesn't freak out." Doc. 44-3 at 61. He stated that "the battery is the core part of the electrical system." Doc. 44-1 at 2, ¶ 8. Newell stated that he did not observe any abnormal performance of the Volta Power System, that it appeared to be operating as

7

Case 3:22-cv-03043-LTS-KEM   Document 56   Filed 04/12/24   Page 7 of 15

designed for the short time that it operated. Doc. 42-3 at 105. He also agreed that the state of the charge that he observed in the Volta Power System was as expected given that the vehicle had been parked and unused between April 2022 and June 2023. Doc. 43-1 at 17, ¶ 83.

When asked whether he could offer any opinions critical of the condition of the Volta Power System, Newell replied "[n]o, because I couldn't fully test the loaded battery." Doc. 44-3 at 56. Newell did not offer any criticisms or identify any problems with the Volta Power System. Doc. 43-1 at 16, ¶¶ 80-81. Newell also stated that he did not find anything that was out of the ordinary or that indicated that something had been repaired incorrectly in a wiring harness. Doc. 44-3 at 56. When asked "if – as later experts showed, once the battery was put in, everything ran great, you'd have no reason to doubt that," Newell responded "Yeah. I think that would be appropriate repair." Doc. 44-3 at 67. Newell did not offer an opinion on the original electrical failure issues with the vehicle, nor did he opine on whether any of the defendants breached their limited warranties. Doc. 42-1 at 9, ¶ 51; Doc. 43-1 at 16, ¶ 73.

Winnebago submitted an expert report by Michael Muffoletto, who stated that he inspected the vehicle on October 12, 2023, performed a test drive of greater than 100 miles on October 31, 2023, and did not detect any issues. Doc. 42-1 at 9, ¶ 48; Doc. 42-3 at 57, 59. Muffoletto opined that the February 5, 2022, electrical failure resulted from a defective wire harness provided and warranted by Volta and that a faulty ABS module provided and warranted by FCA caused the vehicle to stall. Doc. 42-3 at 58-59. He further opined that as of April 8, 2022, both the wire harness and ABS issues were resolved, and that neither issue was warranted by Winnebago. *Id.* at 59.

On October 12, 2023, Eric Mercer inspected the vehicle for VPS. Doc. 43-1 at 17, ¶ 86. The VPS system performed as designed and demonstrated no defects. *Id.* at 17, ¶¶ 87, 88, 89. FCA's expert, Joseph A. Phillips, inspected the vehicle in March 2022 and on October 26, 2023. Doc. 44-1 at 3, ¶ 15. Phillips stated that in March 2022 he was involved in diagnosing the vehicle and he "identified wiring concerns for the

Winnebago side of the harness." Doc. 44-3 at 385. He opined that Winnebago replaced the harness between March 2022 and October 2023. *Id*. The battery was charged prior to Phillips performing a road test on October 26, 2023. *Id*. He declared that "[d]uring the October 26th inspection, the vehicle drove great during the road test. The A/C controls and all our electrical modules were functioning as they should." *Id*. Turning to the ABS module, Phillips stated:

> While the ABS module in the FCA chassis was replaced, there was nothing ever defective about this module nor did it fail. The reason why it was replaced is that the wiring harness problem caused the issues with the vehicle, also created a problem with the non FCA supplied wiring circuitry which caused an ABS module code to appear which led the FCA dealer to simply replace the module as part of my diagnostic work to discover what was wrong with the vehicle. The FCA supplied ABS module of the vehicle did not cause or contribute to any of the vehicle's problems or issues displayed before the wiring harness was repaired or replaced by Winnebago.

*Id*. at 385-86. Phillips concluded: "Any defect in design or operation as alleged by Plaintiffs in their complaint were not caused by any defects from FCA parts and components. Further, there were no defective FCA parts or components in the subject vehicle." *Id*. at 386.

## V. ANALYSIS

Defendants argue that I should grant their motions for summary judgment because they are unresisted. Doc. 56. However, despite plaintiffs' failure to resist, I must "consider whether defendants have met their burden of showing that summary judgment is appropriate." *Stokes v. Hacker*, No. C15-3095-MWB, 2015 WL 7300537, at *3 (N.D. Iowa Nov. 18, 2015), *report and recommendation adopted,* No. C15-3095-MWB, 2015 WL 8347079 (N.D. Iowa Dec. 8, 2015); *see also Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (explaining that the court must still determine that the moving party is entitled to judgment as a matter of law even

9

if the nonmoving party did not oppose the moving party's contentions); *Johnson v. Boyd–Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981) (requiring court to "inquire into the merits of [a motion to dismiss] and to grant or deny it, as the case may be, in accordance with the law and the relevant facts"); Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion, … grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to relief … or … issue any other appropriate order"). Thus, I will consider the merits of defendants' motions.

Defendants assert that that they are entitled to summary judgment because (1) all repairs were timely completed at no cost to the plaintiffs and (2) plaintiffs have not presented any evidence of their damages.[1] *See* Doc. 42-2 at 2; Doc. 43-2 at 7. Winnebago also asserts that plaintiffs have not demonstrated that there was a defect covered under the Winnebago warranty. Doc. 42-2 at 2. Similarly, FCA argues that there is no evidence that any of the parts in the chassis were defective. Doc. 44-2 at 5.

## A. Breach of Warranty

Central to this case are the three warranties that the defendants issued for the vehicle and parts therein. *See* Doc. 42-3 at 25 (Winnebago warranty); Doc. 43-3 at 80-81 (Volta warranty); Doc. 44-3 at 390-419 (FCA warranty). All parties appear to agree that the warranties are written and limited. Plaintiffs' state court petition does not assert

---

[1] VPS also argues that as a matter of law plaintiffs cannot prove VPS violated Florida's Lemon Law. Doc. 43-2 at 18-20. Plaintiffs do not assert a claim under, or even reference, that statute (the Motor Vehicle Warranty Enforcement Act, Fla. Stat. Ann. § 681.10, *et seq.*) in their petition. As such, I need not address that argument.

which state's law should apply.[2] Winnebago does not explicitly state that Iowa law applies but relies on Iowa caselaw in its brief, as does FCA. VPS notes that both Florida and Iowa have adopted the Uniform Commercial Code (UCC) and that I "need not engage in a comprehensive conflict of laws analysis" in analyzing plaintiffs' breach of warranty claims. Doc. 43-2 at 9 n.1. I agree that the application of Iowa versus Florida law does not render different results in this case.

To prevail on their breach of factory warranty claim, plaintiffs must establish that (1) there are express warranties; (2) plaintiffs purchased the vehicle relying on those warranties; (3) there was a breach of the warranties (4) the breach was a proximate cause of the plaintiffs' damage and (5) the amount of the damage. *Iowa Great Lakes Sanitary Dist. v. Travelers Cas. & Sur. Co. of Am.*, No. C15-4252-LTS, 2017 WL 4711438, at *4 (N.D. Iowa July 7, 2017), *aff'd,* 913 F.3d 760 (8th Cir. 2019). "Evidence of a defect is an indispensable element of any express or implied warranty claim." *Iowa Great Lakes Sanitary Dist. v. Travelers Cas. & Sur. Co. of Am.*, 913 F.3d 760, 763 (8th Cir. 2019) (quoting *Coop. Power Ass'n v. Westinghouse Elec. Corp.*, 60 F.3d 1336, 1344-45 (8th Cir. 1995)).

Here, the limited warranties provide only that the defendants will repair or replace defective components within the applicable time and mileage limitations. "Iowa's Uniform Commercial Code (UCC) allows sellers to limit the remedies for breach of warranty to the repair or replacement of goods." *Adrian Trucking, Inc. v. Navistar, Inc.*, 609 F. Supp. 3d 728, 741 (N.D. Iowa 2022); *see* Iowa Code § 554.2719; U.C.C. § 2–719(2)2. Florida similarly allows a remedy limitation to the repair or replacement of defective parts. *See* Fla. Stat. Ann. § 672.719(1)(a). However, buyers may invoke other remedies available under the UCC if a limited remedy fails of its essential purpose.

---

[2] Plaintiffs do not reference either Iowa or Florida law in their petition. They only note that "[t]he Winnebago warranty states that court actions must be commenced in Iowa District Court in and for Winnebago County." Doc. 4 at 5.

*Adrian Trucking,* 609 F. Supp. 3d at 741; Iowa Code § 554.2719(2); Fla Stat. Ann. § 672.719(2); U.C.C. § 2–719(2)2. A repair or replace limited remedy fails when "the seller is given a reasonable chance to correct defects and the equipment still fails to function properly," but when "repair or replacement can give the buyer what is bargained for, a limitation of remedies does not fail of its essential purpose." *Adrian Trucking,* 609 F. Supp. 3d at 742-43 (holding that as a matter of law plaintiff failed to show that the limited remedies failed of their essential purpose because a truck that may have experienced four failures is "not enough to show repair could not give the buyer what was bargained for.").

In other words, repair or replacement fails of its essential purpose only if the defects could not be repaired, as that would deny the plaintiff "the substantial value of the bargain." *Badgett Const. & Dev. Co. v. Kan-Build, Inc.*, 102 F. Supp. 2d 1098, 1104–05 (S.D. Iowa 2000) (citing U.C.C. § 2–719 cmt. 1). "A repair or replace clause does not fail of its essential purpose so long as repairs are made each time a defect arises." *Transp. Corp. of Am. v. Int'l Bus. Machs. Corp.,* 30 F.3d 953, 959 (8th Cir. 1994). "Thus, to establish a breach of warranty plaintiff must demonstrate that [defendant] cannot or will not repair or replace the allegedly defective parts." *Sipe v. Fleetwood Motor Homes of Pennsylvania, Inc.,* 574 F. Supp. 2d 1019, 1026 (D. Minn. 2008), *aff'd sub nom. Sipe v. Workhorse Custom Chassis, LLC,* 572 F.3d 525 (8th Cir. 2009); *see also Bynum Transp., Inc. v. Navistar, Inc.*, No. 8:19-CV-731-T-30CPT, 2019 WL 13226083, at *2 (M.D. Fla. Aug. 13, 2019) (remedy fails of its essential purpose when the "warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts").

Defendants assert there is no dispute that all of the vehicle's defects were fully repaired at no cost to the plaintiffs within weeks of them being raised. Winnebago notes that the ABS module, wire harness and related module, as well as faucet and remote were all repaired or replaced, and that "[d]iscovery has not uncovered any evidence to the contrary." Doc. 42-2 at 5. FCA argues that there was no defect in the FCA chassis or

12

any of its component parts, and that the only chassis part that was replaced under the limited warranty was the ABS brakes module, which Phillips opines was never actually defective. Doc. 44-2 at 1. VPS asserts that there is no genuine issue of material fact that any repairs performed on the vehicle in March and April 2022 fully resolved any issues that may have been attributed to the VPS system. Doc. 43-2 at 14.

Plaintiffs have failed, as a matter of law, to demonstrate that any of the defendants have refused to repair a defect, or that there is a defect that cannot be remedied. To the contrary, the record demonstrates that when an issue was raised, repairs and replacements were undertaken at no cost to plaintiffs, consistent with the limited warranties. Because plaintiffs have failed to raise a genuine issue of fact that warranties' remedy limitations failed of their essential purpose, the only remedies available to plaintiffs are repair and replacement. *See Badgett,* 102 F. Supp. 2d at 1105 (holding that defects are repairable and thus repair or replacement does not fail of its essential purpose).

Nor have plaintiffs raised a genuine issue of material fact that the vehicle has defects that have not been fully remedied. Once they picked up the vehicle in April 2022, they did not experience or report any further issues during their drive to the storage facility. Plaintiffs' expert encountered issues during his inspection of the vehicle, but the undisputed evidence points to the uncharged state of the battery from sitting idle for over a year as the source of those issues. The defendants' experts all inspected the vehicle after it was appropriately charged and encountered no defects whatsoever. As such, plaintiffs' have not raised a genuine issue of material fact that there is a defect in the vehicle that has not been replaced or repaired. Plaintiffs' breach of factory warranty claim fails as a matter of law. *See Iowa Great Lakes Sanitary Dist. v. Travelers Cas. & Sur. Co. of Am.*, 913 F.3d 760, 763–64 (8th Cir. 2019) (affirming grant of summary judgment on breach of warranty claim; "Buyer's remorse, however justifiable, is not proof that the equipment had such serious "defects in workmanship and materials" that IGLSD was justified in refusing Evoqua's offer to repair and replace, the exclusive remedy provided in the warranty, and bringing an action seeking refund of the entire

13

purchase price."). All of the defendants are entitled to summary judgment on plaintiffs' claim for breach of warranty.

## B. *Violation of Magnuson-Moss Warranty Act*

Plaintiffs also assert a claim for violation of the Magnuson-Moss Warranty Act (MMWA). Winnebago argues that the MMWA claim must fail because the underlying breach of warranty claim fails. Doc. 42-2 at 8. Winnebago also argues that the MMWA provides that "[n]o action . . . may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract . . unless the persons obligated under the warranty or service contract is afforded a reasonably opportunity to cure such failure to comply." Doc. 42-2 at 8 (quoting § 2310(e)).

The MMWA grants the holder of a limited warranty a federal cause of action for breach of warranty under the applicable state law. *See* 15 U.S.C. § 2310(d); *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009). The court "looks to state breach of warranty law to determine whether the MMWA was violated through a breach of warranty." *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1224 (D. Minn. 2020). A viable MMWA claim requires that the plaintiff first establishes a viable breach of warranty claim. *See id.* at 1225; *In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.*, 364 F. Supp. 3d 976, 985 (D. Minn. 2019) (dismissing claim under MMWA because without "an underlying state-law breach-of-warranty claim" plaintiffs cannot sustain a MMWA claim) (citation omitted). Because plaintiffs have not raised a genuine issue of material fact for their breach of warranty claim, their MMWA claim also fails as a matter of law. *See, e.g.*, *Temple v. Fleetwood Enterprises, Inc.*, 133 F. App'x. 254, 268 (6th Cir. 2005) ("Ultimately, the applicability of the Magnuson–Moss Act is directly dependent upon a sustainable claim for breach of warranty. Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson–Moss Act.") (citations omitted).

## *VI. CONCLUSION*

For the reasons set forth herein:

1. Defendants' motions (Docs. 42, 43, 44) for summary judgment are **granted in their entirety**.

2. Judgment **shall enter** in favor of the defendants and against plaintiffs.

3. The trial of this case, currently scheduled to begin June 24, 2024, is **cancelled**.

4. Because this order disposes of all claims, the Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 12th day of April, 2024.

_____
Leonard T. Strand
United States District Judge

15

Case 3:22-cv-03043-LTS-KEM    Document 56    Filed 04/12/24    Page 15 of 15